SCHOTT, Judge.
This suit was instituted by plaintiffs, Mr. and Mrs. James Lawrence Decker, against defendants, Michael A. Márchese and Kathryn Phyllis Guerra Lindfors, as an action by the buyers of a house in Chalmette, *211 Louisiana, against the sellers for the cost of repairing a leaking roof over a portion of the premises. Defendants brought a third-party demand against C & Y Contractors and Builders, Inc. (hereafter appellant) alleging that appellant had breached its contract with defendants to repair the roof. The parties stipulated as to the cost of the roof repairs and defendants’ liability to plaintiffs for this amount on the main demand. After a trial of the third-party demand the court awarded defendants a judgment and this appeal has followed. The principal issue is whether the trial court correctly found that the contract between defendants and appellant was ambiguous so as to be properly construed against appellant. The other issue is whether appellant’s attempts to repair the leaks just prior to and following the sale from defendants to plaintiffs, had any probative value in assessing liability against appellant.
While defendants were residing in this house (they were married at the time but subsequently were divorced and both remarried) it was damaged in a flood on May 3,1979, and a fire on May 10,1979. Following the flood and the fire the Fidelity Homestead Association which held the mortgage on defendants’ home engaged C. Earl Colomb to estimate the damage to the property. He did so and apparently verified that the amount tendered by the flood insurer was in order. With respect to the fire loss he negotiated with the fire insurer in behalf of both the Association and defendants, reaching a settlement of $16,500. On March 26, 1979, appellant, of which Co-lomb was one of the principal officers and owners, entered into a contract with defendants to repair the damage to the property for $16,500.
The contract begins on the first page under the letterhead of C & V Contractors and Builders, Inc. and the name and address of defendant, Mr. Michael Márchese, with the reference:
“Fire Loss
612 W. Prospher Street
Chalmette, La.”
This same reference “Fire Loss” is repeated at the top of each of the following three pages of the contract. Following the reference on the first page the contract reads: “We propose to furnish all the necessary labor and material to complete the following work:” There follow four pages of detailed specifications of the work to be done including the items to be replaced, the material to be applied or installed and items to be removed and demolished on a room by room, wall by wall, and ceiling by ceiling basis. Under the category “EXTERIOR” the contract calls for such detailed work and contains the following:
“Check roof for leaks and replace any missing or broken shingles or ridge tiles.”
The contract was performed and the house was subsequently put up for sale by defendants with Colomb as their real estate agent. He sold the house to plaintiffs and the act of sale was scheduled for February 7, 1980. On February 2 plaintiffs discovered that the roof over the solarium and playroom of the house was leaking. The main part of the house consisted of a living room, kitchen, three bedrooms and a laundry room. Over this portion of the house was a built up roof with shingles and ridge tiles but beyond the laundry and kitchen was the 30 foot long solarium and playroom connecting the main part of the house with the garages. Over the solarium and playroom was a flat roof constructed with plywood and topped by tin. Colomb had his company, appellant, do some patch work on the tin roof for $154 of which $87 was paid from the construction escrow account on deposit with the homestead and the balance of $67 he paid to appellant. The act of sale proceeded on schedule, but after plaintiffs moved into the house they discovered that the tin roof over the solarium was still leaking. At no expense to anyone Colomb had his company, appellant, do some additional patch work on this roof. In due course it developed that the tin roof had to be replaced at a cost of $2000, which is the amount of the judgment in the case.
At trial appellant offered the testimony of Colomb, its president Ferdinand Von *212 Behren, and its supervisor, Edmond DeJan, to establish that the fire of May, 1978, had been confined to the main part of the house and did not affect the roof over the solarium. Some work in the solarium was included in the contract but it resulted from smoke or soot damage, and it consisted specifically of replacement of one window screen, wire brushing, sanding and cleaning wood ceiling and wall panels, applying one coat of stain and varnish to the ceiling, walls, doors and wood trim, replacing three missing jalousies, doing some work on the floor and replacing the door between the solarium and the garages. They testified that there was never any work contemplated or required on the roof over this room because it sustained no damage in the fire. They testified that throughout the period of time when the construction was going on, beginning in March, 1979, and while Colomb as real estate agent was trying to sell the property there was never any leak in the solarium. On the other hand, defendants offered evidence that some phonographs and toys which were in the solarium at the time of the fire melted because of the heat.
The trial judge in his reasons for judgment found that appellant prepared the renovation contract “which was intended to repair all the damage to the property from both casualties.” He found further that the contract language with regard to the roof was ambiguous with the result that he construed it against appellant as the draftsman of the contract. He further found that the fire caused the damage to the solarium roof and concluded that the contract obligated appellant to repair that roof and that appellant had breached its contract by failing to make such repairs.
At the outset we find that the contract is not ambiguous with respect to the roof and did not oblige appellant to repair the tin roof over the solarium. As already noted, the contract meticuously spells out all of the work to be done in the house as to labor and material and contains no details of any roof damage to be repaired other than the replacement of missing or broken shingles or ridge tiles. We have concluded that the trial judge erred in construing the words “check roof for leaks” as an obligation to remove and replace the plywood and tin over this solarium. If the parties intended this result they would have specified that work the same way as they specified the hundreds of other items contained in the contract.
Once this conclusion is reached the case could come to an end because defendants’ cause of action against appellant is based purely and simply on a breach of this contract. However, in his reasons for judgment the trial judge apparently attached some significance to the fact that when the roof leaks were found by plaintiffs Colomb immediately called his company to make the repairs and the company returned three or four times after the sale was passed to attempt additional repairs. We are unable to conclude that these efforts on appellant’s part somehow made it liable for the cost of replacing the tin roof. Any legal liability on appellant must flow from its original contract. Appellant’s gratuitous attempts to patch up the roof could not enlarge its contractual obligations.
The other point need not be addressed for our purposes in this opinion but will be addressed for the benefit of any reviewing court. We find that the trial court committed manifest error in concluding that the leaks in the tin roof were caused by the fire. We find from the testimony of appellant’s witnesses that the fire did not extend beyond the kitchen and laundry room and did not generate enough heat to cause any damage to the ceiling and roof over the solarium. This room extended 30 feet back from the laundry room to the garages and all of the leaks were on the end near the garages. The work required in the front of the house consisted of considerable demolition work with the removal of walls and ceilings. No such extensive work was required on the walls and ceilings in the solarium. The only evidence offered by defendants as to the effects of the fire in the solarium was with respect to damage to phonograph records and toys, but they offered no evidence, lay or expert, to show *213 that this roof damage was caused by the fire. The evidence shows that the roofer engaged by plaintiffs was available to testify at the beginning of the trial but was excused. Perhaps he could have testified that the roof damage was caused by the fire but he was not called as a witness.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of third-party defendants, C & V Contractors and Builders, Inc., and against defendants and third-party plaintiffs, Michael A. Márchese and Kathryn Phyllis Guerra Lindfors, dismissing their third-party demand at their cost.
REVERSED AND RENDERED.